IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JILLINA A. MANION,                )
                                  )
                Plaintiff,        )
                                  )      No.  CV-06-739-HU
        v.                        )
                                  )
THE UNITED STATES,                )      OPINION & ORDER
                                  )
                Defendant.        )
_____)

Carl R. Neil
Glen P. McClendon
Jenni E. Marsh
LINDSAY, HART, NEIL & WEIGLER, LLP
1300 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97201-5640

        Attorneys for Plaintiff

Karin J. Immergut
UNITED STATES ATTORNEY
James L. Sutherland
ASSISTANT UNITED STATES ATTORNEY
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

        Attorneys for Defendant

HUBEL, Magistrate Judge:

        Plaintiff Jillina Manion brings this Federal Tort Claims Act

action against the United States for damage done to her property.

1 - OPINION & ORDER

Defendant moves to dismiss based on the statute of ultimate repose. Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant the motion.

BACKGROUND

Plaintiff owns a residence and real property of 0.27 acres in Astoria. Am. Compl. at ¶ 1. The United States Coast Guard is an owner of 43 acres located next to the east line of plaintiff's property. Id. at ¶ 2.

Plaintiff's residence was built in 1969. Id. at ¶ 5. Plaintiff acquired it in 1990. Id. Plaintiff's property is adjoined on the east by the steep westerly slope of a ravine that runs generally parallel with the east line of plaintiff's property and a small stream running at the bottom of the ravine, approximately fifty feet below the level of plaintiff's adjacent property. Id.

Before 1993, the ravine and stream were in their natural state and the westerly slope of the ravine furnished lateral support to plaintiff's adjacent property. Id. at ¶ 6. Also, up to that time, Alameda Avenue, which runs on the north, front line of plaintiff's property, terminated at the northeasterly corner of plaintiff's property and near the top of the westerly slope of the ravine. Id.

In 1993-1994, the Coast Guard constructed a large housing development consisting of over one hundred residential units, on the property adjacent to plaintiff's property. Id. at ¶¶ 2, 7. In the course of that construction work, defendant caused Alameda Avenue to be extended from its former terminus at the northeastern corner of plaintiff's property to cross the ravine and continue

2 - OPINION & ORDER

1  into defendant's property by placing a culvert approximately forty-
2  eight inches in diameter at the bottom of the ravine and filling
3  the ravine to street level.  Id. at ¶ 7.

4     The Coast Guard further caused excavation work to be done at
5  the bottom of the ravine and in the slopes of the ravine adjacent
6  to plaintiff's property in order to divert into the culvert and
7  stream a large quantity of water draining downhill on defendant's
8  property from the housing unit areas that had formerly not drained
9  into the ravine.  Id.

10    Plaintiff alleges that the construction removed the lateral
11 support of her property furnished by the westerly slope of the
12 ravine on defendant's property adjacent to the easterly line of
13 plaintiff's property, causing plaintiff's residence to subside and
14 its foundation, walls, and ceilings to crack and break up.  Id. at
15 ¶ 8.  Plaintiff contends that the extent of the subsidence
16 continues to increase as time passes, and will make plaintiff's
17 residence uninhabitable in the near future until the subsidence is
18 halted by reconstruction of plaintiff's residence or other means.
19 Id.

20    Plaintiff contends that defendant's removal of the lateral
21 support of plaintiff's property was negligent in that defendant was
22 warned by its soils engineers that soils in the ravine and slopes
23 were unstable, and that excavation and other work in the ravine
24 would cause slippage and subsidence of those soils and of soils on
25 nearby property, including plaintiff's property, unless certain
26 measures were taken in excavating and altering the ravine and
27 stream to avoid those results.  Id. at ¶ 9.  Plaintiff contends
28 that defendant failed to cause those measures to be performed or to

3 - OPINION & ORDER

1  be performed properly, and failed to inspect the excavation and
2  other alterations of the ravine and stream to see that the
3  recommended measures were performed or were performed properly.
4  Id. at ¶ 10.

5      Plaintiff further contends that since the alleged negligent
6  conduct described above, defendant has continued to be negligent in
7  failing to inspect and maintain the ravine area on its property
8  adjacent to plaintiff's property in such a manner as to prevent its
9  slippage and subsidence and reduction of lateral support to
10 plaintiff's property.  Id.

11     Plaintiff contends that she did not discover the subsidence
12 damages to her property and that defendant's conduct caused it,
13 until 2004, less than two years before filing the case.  Id. at ¶
14 12.  Plaintiff alleges that she has been damaged in the amount of
15 $240,400 for the alleged negligent conduct.  Id. at ¶ 11.

16                            STANDARDS

17     On a motion to dismiss, the court must review the sufficiency
18 of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
19 The court should construe the complaint most favorably to the
20 pleader.

21         In appraising the sufficiency of the complaint, we
22         follow, of course, the accepted rule that the complaint
           should not be dismissed for failure to state a claim
23         unless it appears beyond doubt that the plaintiff can
           prove no set of facts in support of his claim which would
24         entitle him to relief.

25 Conley v. Gibson, 355 U.S. 41, 45-46 (1957); American Family Ass'n,
26 Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th
27 Cir. 2002).  The allegations of material fact must be taken as
   true.  Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994).
28

1                                    DISCUSSION

2          Under the Federal Tort Claims Act (FTCA), a claim may be

3    asserted against the United States for money damages for injury to

4    or loss of property caused by the negligent or wrongful act of any

5    employee of the federal government while acting within the scope of

6    his office or employment under circumstances where the United

7    States, if a private person, would be liable to the claimant in

8    accordance with the law of the place where the act or omission

9    occurred.    28 U.S.C. § 1346(b)(1); see also United States v.

10   Orleans, 425 U.S. 807, 813 (1976) (the federal government is liable

11   to the same extent as a private party for certain torts of federal

12   employees acting within the scope of their employment); 28 U.S.C.

13   § 2674 (the United States is liable "in the same manner and to the

14   same extent as a private individual under like circumstances").

15         As explained by the Supreme Court, "[a]s this provision [28

16   U.S.C. § 2674] makes clear, in conjunction with the jurisdictional

17   grant over FTCA cases in 28 U.S.C. § 1346(b), the extent of the

18   United States' liability is generally determined by reference to

19   state law." Molzof v. United States, 502 U.S. 301, 305 (1992).

20         Under Oregon Revised Statute § (O.R.S.) 12.115,

21         (1) In no event shall any action for negligent injury to
           person or property of another be commenced more than 10
22         years from the date of the act or omission complained of.

23         (2)  Nothing in this section shall be construed to extend
           any period of limitation otherwise established by law,
24         including but not limited to the limitations established
           by ORS 12.110.
25
     O.R.S. 12.115.
26
           Additionally, O.R.S. 12.135 provides that
27
           (1) An action against a person, whether in contract, tort
28         or otherwise, arising from such person having performed

5 - OPINION & ORDER

the construction, alteration or repair of any improvement
to real property or the supervision or inspection
thereof, or from such person having furnished the design,
planning, surveying, architectural or engineering
services for such improvement, shall be commenced within
the applicable period of limitation otherwise established
by law; but in any event such action shall be commenced
within 10 years from substantial completion or
abandonment of such construction, alteration or repair of
the improvement to real property.

* * *

(3)    For purposes of this section, "substantial
completion" means the date when the contractee accepts in
writing the construction, alteration or repair of the
improvement to real property or any designated portion
thereof as having reached that state of completion when
it may be used or occupied for its intended purpose or,
if there is no such written acceptance, the date of
acceptance of the completed construction, alteration or
repair of such improvement by the contractee.

O.R.S. 12.135.

Defendant argues that plaintiff's claim is barred by O.R.S.
12.115 and/or 12.135.[1]  Defendant notes that the Amended Complaint
alleges that construction was completed in 1994 and the
administrative tort claim alleges that it was completed in 1993.
The administrative tort claim was not filed until April 7, 2005,
and the Complaint was not filed until May 22, 2006.  Neither the
administrative tort claim nor the Complaint were filed within 10
years of the alleged negligent act or the completion of the
construction project.

Plaintiff contends that the statute of repose does not apply

---

[1]    In the motion to dismiss, defendant moves to dismiss
based on these statutes, but alternatively moves to limit
plaintiff's claim to the amount of damages specified in her
administrative claim.  After the motion was filed, plaintiff
filed an amended complaint.  In its reply brief, defendant states
that it will not pursue the alternative motion at this time, but
will wait, if the claim survives the motion to dismiss, for
discovery before raising that argument.

6 - OPINION & ORDER

1  because she had an active, continuous relationship with defendant,

2  and alternatively, that a continuing duty by defendant to inspect

3  and maintain the ravine area on its property to ensure adequate

4  lateral support is enough to sustain her claim.  She also argues,

5  based on a Kansas case, that her action did not accrue until her

6  land subsided.

7      I reject plaintiff's active, continuous relationship argument.

8  In Josephs v. Burns, 260 Or. 493, 491 P.2d 203 (1971), overruled in

9  part on other grounds, Smothers v. Gresham Transfer, Inc., 332 Or.

10 83, 23 P.3d 333 (2001), the Oregon Supreme Court addressed the

11 statute of ultimate repose in O.R.S. 12.115(1) in a construction

12 case involving a collapsed roof.  The court first rejected the

13 plaintiffs' argument that the ten-year limitation did not begin to

14 run until the roof collapsed.  Id. at 496, 491 P.2d at 204.  The

15 court stated that the statute was intended "to provide an overall

16 maximum upper limit on the time within which a tort action could be

17 brought, regardless of the date of discovery or of any other

18 circumstances." Id. at 498, 491 P.2d at 205.  The court also noted

19 that "the inability of the damaged party to bring an action was not

20 intended to prevent the running of the statutory period." Id. at

21 496, 491 P.2d at 204.

22     Based on this holding from Josephs, it is clear that O.R.S.

23 12.115(1) bars plaintiff's allegations of negligent design and

24 construction of the Coast Guard housing facility and the area

25 adjacent to plaintiff's property.  See Little v. Wimmer, 303 Or.

26 580, 583, 739 P.2d 564, 565-66 (1987) (holding that the trial court

27 correctly held that O.R.S. 12.115(1) and 12.135 barred the

28 plaintiffs' action for defects existing as a result of the design

7 - OPINION & ORDER

1    or at the time of the original construction, as the subject

2    intersection was designed and constructed more than 10 years before

3    plaintiffs' cause of action).

4        The Josephs court then addressed the plaintiffs' argument that

5    the defendants had a continuing duty to warn them of the hazards of

6    an improperly constructed roof.  The court responded that

7            [i]f the statute was intended to be one of ultimate
             repose, regardless of circumstances, it would follow that
8            the legislature did not intend the statute to be
             circumvented by allegations that subsequent to the
9            fundamental wrong, a continuing duty existed to rectify
             the results of such wrong.  By this statement we do not
10           intend to prejudge a situation in which an active,
             continuous relationship between plaintiff and defendant
11           exists from the time of the negligent acts to a time
             within the period during which an action is permitted.
12
     Id. at 501-02, 491 P.2d at 207.
13
         A 1977 case further explained the "active, continuous
14
     relationship" exception noted in Josephs.  In Cavan v. General
15
     Motors, 280 Or. 455, 571 P.2d 1249 (1977), the court rejected the
16
     argument that the provision by a manufacturer of a part, post-sale,
17
     was sufficient to show a continuing relationship as envisioned in
18
     Josephs.  The court explained its earlier holding in Josephs:
19
             In Josephs we withheld consideration of situations in
20           which the plaintiff is in a relationship of trust and
             confidence with the defendant and in which continued
21           treatment or other ongoing resort to the skills of the
             defendant is required.  The classic example is the
22           doctor-patient relationship. . . . . In cases such as
             this the potential plaintiff may be in no position of
23           independence to recognize fairly the existence of a cause
             of action until the relationship is terminated.  Such a
24           situation may call for a different application of the
             policies behind a statute of limitations or statute of
25           ultimate repose.

26   Id., 280 Or. at 458, 571 P.2d at 1250 (citation omitted).

27       A more recent Oregon Court of Appeals case, Rutter v. Neuman,

28   188 Or. App. 128, 71 P.3d 76 (2003), one with facts more analogous

     8 - OPINION & ORDER

1    to the instant matter, rejected an argument made by the plaintiffs

2    based on the <u>Josephs</u> "active, continuous relationship" exception to

3    the statute.  There, the plaintiffs alleged negligence by the City

4    of Ashland, arising out of a landslide that damaged their property.

5    The City argued that the action was time barred under either O.R.S.

6    12.115(1) or 12.135(1).  The plaintiffs argued that neither of

7    those statutes applied because their action was not based on the

8    failure of the city to abate the condition in 1984, but rather on

9    the continuing failure to take action from 1984 through the filing

10   of the complaint in 1997.

11       Relying on <u>Josephs</u> and other cases, the plaintiffs argued that

12   they had an "active, continuous relationship" with the city by

13   virtue of what the plaintiffs described as a continuing obligation

14   to remedy public nuisances as provided in the municipal code.  The

15   court discussed earlier cases, including <u>Cavan</u>, in regard to the

16   "active, continuous relationship" issue and rejected the

17   plaintiffs' argument.  <u>Id.</u> at 136-37, 71 P.3d at 80.  The court

18   noted that there was no evidence of any relationship between the

19   plaintiffs and the city after 1984, when the plaintiffs moved out

20   of the house and decided not to sue.  <u>Id.</u>  It explained that

21   "[p]laintiffs have cited no evidence of any conversations,

22   correspondence, or other communications between them and the city

23   from 1984 to 1997.  Certainly nothing in the record demonstrates

24   the existence of the sort of 'relationship of trust and confidence

25   with the defendant' that the court said was necessary in <u>Cavan</u>."

26   <u>Id.</u>

27       Here, defendant notes that plaintiff has not alleged an

28   active, continuous relationship between the parties.  Nothing in

9 - OPINION & ORDER

1   the Amended Complaint demonstrates the existence of a relationship
2   of trust or confidence with the government that would constitute an
3   active, continuous relationship between the parties.  As in <u>Rutter</u>,
4   there is no evidence of any "conversations, correspondence, or
5   other communications" between the plaintiff and the Coast Guard.
6   Moreover, the cases do not support finding the presence of an
7   active, continuous relationship as articulated in <u>Josephs</u> based
8   only on the status of adjoining landowners.  Without any additional
9   allegations, plaintiff cannot sustain a continuing negligence claim
10  on the basis of an active, continuous relationship with defendant.

11      Plaintiff next relies on <u>Little</u> to argue that her allegations
12  of post-construction negligence in paragraph 10 of the Amended
13  Complaint are distinguishable and not subject to the limitations in
14  the statutes of ultimate repose.  In <u>Little</u>, the court, as noted
15  above, affirmed the trial court's conclusion that any claims based
16  on the original design and construction of an allegedly dangerous
17  intersection, were barred by the statute of ultimate repose.

18      The court then distinguished the plaintiffs' "independent
19  premise" that the defendants were negligent in failing to remedy a
20  dangerous condition of the highway and in failing to warn motorists
21  of the existing dangerous condition of the highway.  <u>Little</u>, 303
22  Or. at 585, 739 P.2d at 567.  Such allegations were not subject to
23  the statute of ultimate repose when they were separate and apart
24  from any alleged negligence at the time of design and construction
25  or any failure to correct such original negligence.  <u>Id.</u>

26      The court noted that there was no dispute that the state was
27  responsible for maintaining the intersection.  <u>Id.</u>  The state was
28  charged by statute with the continuous supervision and control of

10 - OPINION & ORDER

1   maintenance and improvement of the state's highways.  <u>Id.</u> at 585,

2   739 P.2d at 567.   The state conceded as much.   <u>Id.</u>   The court

3   further noted that the evidence that a number of accidents had

4   occurred at or near the intersection created factual questions

5   about the foreseeability of risk and the appropriateness of the

6   defendant's conduct in failing to remedy the situation or in

7   failing to warn motorists of the potential danger of that part of

8   the highway.  <u>Id.</u> at 586, 739 P.2d at 567.   These were issues

9   appropriately reserved for the jury.

10       Relying on <u>Little</u>, plaintiff here argues that she has a viable

11  allegation of continuing negligence by defendant, for failing to

12  inspect and maintain the ravine area on the Coast Guard's property

13  adjacent to her property in such a manner as to prevent its

14  slippage and subsidence and reduction of lateral support to her

15  property.   She contends that this allegedly negligent conduct

16  continues to the present day.

17       She argues that just as the Oregon Supreme Court ruled that

18  the allegations of plaintiff in <u>Little</u> relating to an ongoing

19  failure to remedy and a failure to warn prevented summary judgment

20  to the defendant on a statute of ultimate repose theory,

21  defendant's motion to dismiss in the instant case should be denied

22  in light of defendant's continuing duty to provide lateral support.

23       Defendant responds that plaintiff's allegations of post-

24  construction and design negligence do not identify a statute, rule,

25  or duty that requires independent, contemporaneous maintenance or

26  inspection.   Without such a requirement, defendant argues, the

27  continuing negligence allegations in paragraph 10 of the Amended

28  Complaint should be barred.

11 - OPINION & ORDER

1    I agree with defendant.  The allegations in paragraph 10
2  expressly address defendant's alleged failure to inspect and
3  maintain the ravine area.  Am. Compl. at ¶ 10.  Unlike in <u>Little</u>,
4  defendant does not concede any duty to provide ongoing inspection
5  and maintenance.  Unlike in <u>Little</u>, there is no identified source
6  of such a duty.

7    In her memorandum in opposition to the motion to dismiss,
8  plaintiff refers to defendant's duty, as an adjoining landowner, to
9  provide lateral support to plaintiff's property.  Although
10 plaintiff cites no Oregon cases discussing such a duty, I assume
11 for the purposes of this Opinion, that Oregon recognizes one.  <u>See</u>
12 <u>State ex rel. Dep't of Transp. v. Winters</u>, 170 Or. App. 118, 128,
13 10 P.3d 961, 968 (2000) (right of lateral support is a right of
14 property annexed to land).  Nonetheless, this "duty" by defendant
15 to provide lateral support in support of plaintiff's continuing
16 negligence allegations does not bar the application of the statute
17 of ultimate repose because any such duty by defendant was breached
18 at the time of the construction of the Coast Guard housing units.
19 That is, the lateral support was removed before the statute of
20 repose time period and any claim based on the violation of such a
21 duty is time barred.

22    Additionally, as conceded by plaintiff during oral argument,
23 plaintiff has no evidence of any apparent post-construction problem
24 or accident or event which would independently sustain a post-
25 construction or design negligence claim, or at least create some
26 duty by defendant to address the problem by acting or refraining
27 from acting.  As such, I find no basis for concluding that <u>Little</u>
28 supports an exception to the application of the statute of ultimate

1  repose.

2      Finally, plaintiff relies on a 1993 Kansas case which

3  concerned a trespass claim following the collapse of a subsurface

4  mine. Nida v. American Rock Crusher Co., 253 Kan. 230, 855 P.2d 81

5  (1993).  The Nida plaintiffs brought a trespass action after a

6  subsurface mine collapsed, damaging their property.  The last

7  quarrying activity occurred in 1960, but the collapse of the land

8  did not occur until 1990.  The issue before the Kansas Supreme

9  Court was whether the statute of repose contained in Kansas statute

10  60-513(b) barred the plaintiffs' action.

11      Subsection (a) of the statute provided a two-year statute of

12  limitations for trespass claims.  Id. at 231, 855 P.2d at 82.

13  Subsection (b) provided that

14          "[t]he causes of action listed in subsection (a) shall
           not be deemed to have accrued until the act giving rise
15         to the cause of action first causes substantial injury,
           or, if the fact of injury is not reasonably ascertainable
16         until some time after the initial act, then the period of
           limitation shall not commence until the fact of injury
17         becomes reasonably ascertainable to the injured party,
           but in no event shall an action be commenced more than 10
18         years beyond the time of the act giving rise to the cause
           of action."
19
20  Id. at 232, 855 P.2d 81 (quoting K.S.A. 1992 Supp. 60-513(b))

21  (emphasis added).

22      The defendant mining company argued that the "act giving rise

23  to the cause of action" was the underground quarrying activity,

24  which had occurred more than ten years prior to the plaintiffs

25  filing suit.  The plaintiffs contended that the "act giving rise to

26  the cause of action" was the collapse of their surface land, which

27  had occurred the same year they filed suit.

28      The Kansas Supreme Court distinguished negligence claims from

13 - OPINION & ORDER

intentional torts, focusing primarily upon trespass actions.  It
stated:

> Although a negligence cause of action usually runs
> from an act of a defendant, a trespass action need not,
> and often would not, run from an act of defendant.  There
> is no trespass until the entry is accomplished and the
> damage occurs (or has begun to occur, as in a case of
> continuing trespass).  The trespass counterpart of the
> negligence "wrongful act" is the entry and the damage.
> In the present case, the entry was accomplished and the
> damage occurred when the surface fell. . . . Here, the
> "act giving rise to the cause of action" was the
> subsidence of the surface and not the mining operations.
> The mining of the coal was not wrongful and did not give
> rise to a cause of action during or upon completion of
> the mining of the coal.

Id. at 238-39, 855 P.2d at 86-87.

Based on Nida, plaintiff argues that her claims against
defendant did not accrue until her property and house began to
move.  She notes that the Amended Complaint does not state exactly
when damage to her property began to occur, but it does allege that
she did not discover the subsidence caused by defendant's conduct
until 2004, less than two years before the filing of the case.  She
argues that because defendant fails, in this motion, to show that
she filed her action more than ten years after the land subsided,
the case should not be dismissed.

I agree with defendant that Nida is distinguishable.  First,
as a Kansas case, Nida is not binding on an Oregon claim.  Second,
Nida may be persuasive authority for a trespass claim, but not a
negligence claim.   Id. at 239, 855 P.2d at 87 (noting that
negligence and product liability cases cited by the defendant were
distinguishable because they involved the wrongful act of
negligence or manufacturing and selling a defective or harmful
product, but in the trespass claim at issue, the act giving rise to

14 - OPINION & ORDER

the cause of action was the subsidence of the surface and not the mining operations.).  Because plaintiff in the instant case does not bring a trespass claim, <u>Nida</u> is inapplicable.

Third, even if plaintiff were to bring her claim as a trespass claim, <u>Nida</u> does not supply appropriate reasoning for an Oregon trespass claim.  Under Oregon law, "negligence describes the defendant's conduct whereas trespass and nuisance describe the invasion of plaintiff's interest in land.  Thus either a trespass or a nuisance may arise out of intentional, negligent, reckless, or ultrahazardous conduct." <u>Furrer v. Talent Irrigation Dist.</u>, 258 Or. 494, 506 n.5, 466 P.2d 605, 611 n.5 (1970); <u>see also</u> <u>Martin v. Union Pac. R.R. Co.</u>, 256 Or. 563, 565, 474 P.2d 739, 740 (1970) ("[a] trespass arises when there is an intrusion upon the land of another which invades the possessor's interest in the exclusive possession of his land.  The intrusion may be caused by either intentional, negligent, reckless or ultrahazardous conduct."); <u>Carvahlo v. Wolfe</u>, 207 Or. App. 175, 181-82, 140 P.3d 1161, 1164 (2006) (damage from tree roots did not constitute trespass without an allegation of fault based on intentional, reckless, or negligent conduct, or in the absence of an allegation of engagement in ultrahazardous activity).

Kansas does not appear to require an allegation regarding the nature of the defendant's conduct to sustain a trespass claim. Here, to support a trespass claim, plaintiff must allege that defendant's acts of "intrusion" of land were a result of

15 - OPINION & ORDER

1   defendant's negligent conduct.[2]  As such, the statute of ultimate
2   repose in O.R.S. 12.115 bars her claim.

3       In Cereghino v. Boeing Co., 826 F. Supp. 1243 (D. Or. 1993),
4   Judge Jelderks considered both intentional and negligent trespass
5   claims brought by the plaintiffs against a neighboring landowner
6   for contamination of the plaintiffs' groundwater by hazardous
7   chemicals.  After granting summary judgment to the defendant on the
8   intentional  trespass  claim,  Judge  Jelderks  considered  the
9   defendant's argument that the statute of ultimate repose in O.R.S.
10  12.115  barred  the  negligent  trespass  claim  because  it  was
11  undisputed that more than ten years elapsed between the use of the
12  chemical on the defendant's property and the filing of the action.

13      Judge Jelderks first explained that he "initially questioned
14  the proposition that the statute of ultimate repose could bar
15  plaintiffs' negligent trespass and nuisance claims, because it
16  appeared to be inconsistent with a neighboring landowner's ongoing
17  responsibilities, such as that of providing lateral and subjacent
18  support to contiguous property." Id. at 1247.  However, despite
19  "continu[ing] to find the application of the statute of ultimate
20  repose to the facts of this action somewhat inconsistent with the
21  general obligations of a neighboring landowner[,]" Judge Jelderks
22  concluded, "after devoting considerable attention and research to
23  this issue," that the statute barred the negligent trespass and
24  nuisance claims.  Id.

25

26      [2]  While in theory a trespass claim can be supported by an
27  allegation that the defendant acted intentionally or recklessly,
    or engaged in ultrahazardous activity, the Amended Complaint
28  supports only an allegation of negligent conduct.

1    Judge Jelderks based his conclusion "primarily upon the Oregon

2  Supreme Court's explication of the effect of the statute of

3  ultimate repose in Josephs[.]"   Id.   He noted that the Josephs

4  court explained that the words "'act or omission complained of' did

5  not relate to the collapse of the roof" because "'it seems obvious

6  . . . that such language refers to the acts of commission or to

7  omissions which are the basis for plaintiffs' claims of defendant's

8  negligence and that the language does not refer to the occurrence

9  of the resulting damage.'"   Id. at 1248 (quoting Josephs, 260 Or.

10  at 496, 491 P.2d at 204) (ellipsis in Cereghino).

11    Judge Jelderks explained that

12         Under Josephs, it is clear that the "act or
       omission" referred to in the statute of ultimate repose
13     is an act or omission of a person, not the act of objects
       such as hazardous substances.  This case also clarifies
14     that the statute begins to run at the time of an initial
       negligent act or omission, and does not refer to any
15     ongoing duty to correct the initial wrong.  In the
       present action, plaintiffs' contentions that the "acts"
16     complained of are the invasion of contaminants, and the
       omission was the failure to prevent the migration after
17     disposal, therefore fail.  The Oregon Supreme Court left
       no doubt in Josephs that potential plaintiffs such as the
18     Cereghinos can be barred from recovery even before they
       have been harmed.
19
   Id.
20
21    In the instant case, even if plaintiff were to further amend

22  her Amended Complaint to bring a trespass claim instead of a

23  negligence claim, the reasoning of Josephs and Cereghinos shows

24  that the claim would still be barred by O.R.S. 12.115 and thus, any

25  such amendment would be futile.  Accordingly, defendant's motion is

26  granted.

27  / / /

28  / / /

17 - OPINION & ORDER

1

CONCLUSION

2          Defendant's motion to dismiss (#4) is granted.

3          IT IS SO ORDERED.

4                         Dated this <u>18th</u> day of <u>October</u>, 2006.

5

6

7                                         <u>/s/ Dennis James Hubel</u>
                                          Dennis James Hubel
8                                         United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18 - OPINION & ORDER